Good morning. Good morning. May it please the Court, my name is Jennifer Wiedekind for Plaintiff Appellant Jeffrey Geter. This case is about whether Jeffrey Geter should be barred from court because his mental disabilities and erroneous staff assistance made exhausting his administrative remedies impossible. Mr. Geter has bipolar disorder, a serious mental illness, and he has intellectual disabilities. Because of these disabilities he asked a staff member to help him with the grievance process. That staff member failed to follow the grievance rules herself and as a result Mr. Geter's grievance was thrown out on procedural grounds. Under these circumstances, administrative remedies were not available to Mr. Geter under the PLRA. Can I interrupt one second, are you suggesting that your client was misled by the prison employee? Yes, the prison employee failed to follow the grievance rules herself, failed to follow that one issue rule. So that would come under probably the third category set forth in Ross v. Blake? Yes. So your position is not that there are other categories that are exceptions to the exhaustion requirement, but that your client qualified under the third category? Well, I think that was... I didn't pick that up from the briefing. Well, because I think that's not quite what our position was. Yes, this could fall under the third category of Ross. However, we argue that Ross does not limit the unavailability analysis to simply three categories. I understand that, but I kind of got the feeling that you were changing your theory that he actually qualified for one of the Ross exceptions, the third exception, intimidation or just not, because he was affirmatively misled, which is different than he couldn't figure out the process because of his mental limitations. Yes, well, I think both apply, and I don't think that's a change in theory. We did discuss this in our briefing. What evidence is there that the employee misled him with regard to the application? Well, he asked the staff member for assistance, and in response, according to Mr. Jeter's paperwork to her, and she did all of his grievances. Indeed, the grievance at issue is not in his handwriting. And so her failure to follow the grievance rules herself resulted in that grievance being thrown out. Now, we can't describe motive to the staff member, but we don't need to under Ross. Simply providing erroneous information or erroneous assistance is enough to render remedies unavailable. Even if you don't expand the three categories in Ross? That's correct. Because you have implicated the third category of Ross, why, if we agree with you, why would we need to consider what you are also arguing, which would be an expansion to look at his inability to comprehend these procedures? Well, this court could rule solely under the third category of Ross, but we think it's fair to say that this court erred when it held that the three Ross categories were exclusive. Nothing in Ross indicates that those three scenarios were meant to be an exclusive list. But would we need to even reach that issue if we were to agree that the third category of Ross is implicated? No, the court could decide this case without reaching that question. Okay, so let's go beyond that, and let's assume, arguendo, that at the heart of your claim is something that goes beyond the three categories laid out in Ross. Lay out the fourth one and tell us why you think we ought to reach for it. Well, again, Ross did not seek to narrow the availability analysis so dramatically. It, in fact, affirmed the availability analysis, declaring that it has, quote, real content, and instructed courts that it must conduct a, quote, thorough review of all the evidence in the record before making a determination about availability. Now, it discussed three possible scenarios that may have rendered remedies unavailable in the case before it, saying that these scenarios were relevant to that case. However, it never noted that those three scenarios should be exhausted, and indeed, every circuit, sister circuit, to have considered the question, the Second, the Seventh, and the Ninth circuits have all held that the Ross scenarios were simply examples. So we are not suggesting that there is yet another fourth category. We are suggesting that the unavailability analysis requires an individualized inquiry into the facts of each case to make a determination about whether remedies were available. Such as mental limitations of Mr. Kidder? That's correct. Such as mental limitations. How is that not a special circumstance? He's different from all the other inmates because he has limitations with regard to his ability to comprehend the process. It's not a special circumstance because the analysis comes under the availability exception that is found in the text of the PLRA. And again, Ross distinguished between the two, rejecting special circumstances where there the Fourth Circuit had held that remedies would have been available, but looked for another reason to excuse failure to exhaust. Instead, we are saying remedies were not available in the first instance. Let me ask you about these burdens. Who's got what burden? I have no doubt that the defendant has an initial burden, an ultimate burden of persuasion of establishing that a grievance procedure is not generally available. Once, however, the defendant has met its burden and established that the grievance procedure is generally available, does not the burden of going forward shift to a particular petitioner or plaintiff to establish that, for whatever reason, the procedure was unavailable to him? Well, that burden-shifting structure that you just described is not currently the law of this circuit. However, other sister circuits have. I understand that, but I'm just asking you the question. Assuming with me what is clear, that the burden of persuasion rests with the defendant to establish a grievance mechanism or procedure, once the defendant has established that, wouldn't the burden then turn to you to go forward and show us why that generally available grievance procedure was not available for some particular reason to this individual petitioner? Well, it could, and if there were a burden of production on Mr. Jeter, he has met it. Tell me why. Well, he, two notes to that. First, of course, as you noted, as a preliminary matter, the burden is on defendants to plead and prove that remedies were available to Mr. Jeter. I think that's clear. Okay. And they have failed to meet that burden here. Why? Because they provided only general information about the grievance procedure. They only provided information about the grievance policy as a general matter, and they only provided information about how that policy is communicated to prisoners upon intake as a general matter. They provided no information showing that Mr. Jeter received an explanation of the grievance procedure. I thought that he, in fact, did file a grievance here. He filed something, right? He asked the staff member for assistance, and she filed the grievance. He files a grievance in writing, accumulating multiple claims. Yes. So, he knew enough that he had to file something using a certain kind of form with an appropriate party, right? Or did I misapprehend that? Well, it's actually not clear what of the grievance process he understood himself, because What did he do? He asked the staff member for assistance. And then what happens? And then the staff member told him to give her all of his papers, and he says in his sworn declarations that she did all of his grievances for him. She filled out that grievance form herself, presumably based on a conversation with him or something. You know, that is unclear. But she filled out the form herself and was the one who submitted it through the process. And the form was erroneous because it accumulated multiple claims rather than filling them out separately? That's right. And so the error on the part of the administrator was that they should have taken it one by one and should have filled out 17 separate grievances? That's correct. For her to have followed the procedure herself, she would have had to have put just one of his concerns on one grievance form. But now, to go to the second part, that he has met his burden of production if he has that burden. Though he is not required to affirmatively plead exhaustion in his early filings, Mr. Jeter repeatedly included information about his serious mental illness, information about his intellectual disabilities. Well, let me ask this. It's in his complaint, basically, right, that he has these limitations? Yes. But did he ever approach the prison and say, because of these limitations, I seek assistance? Is that in the record? If so, when was that first proposed by him? He does not state it quite that clearly. He does lay out the chain of events where he wanted to file a grievance and so sought that help from a staff member. And when did that take place and how did it take place? When did he ask for that assistance? What stage and how did he do it? Well, that was prior to filing the grievance. He verbally sought assistance from a staff member. And as a result of that request, again, she said, give me your papers, and she filled out the grievance form for him. I'm having trouble understanding how this second burden was met by your client. Is it your position that he put enough forward to say that, broadly speaking, he didn't know how to do anything here, that the mental illness or disability that he sustained made it impossible for him to provide or comply in any way with any grievance? Or is he saying, I didn't know enough to know that there was a single-issue rule? Your Honor, I think his mental disability— Because there's nothing I can see on the record that goes to the latter. That's right, because his mental disabilities made it so he could not understand the grievance procedure as a whole. That misunderstanding was not limited to a single provision. And regarding his burden of production, I'll also note that in response to defendant's motion to dismiss, where the only issue on the table—and if I may complete my answer— Sure, you take your time. The only issue on the table there was failure to exhaust. And in response to that motion to dismiss, Mr. Jeter again affirmed that he has been diagnosed with bipolar disorder, affirmed that he cannot think good and has trouble understanding— All of that may be true, but that doesn't necessarily say that he's incapable of following the procedures to file a grievance. You can be bipolar and still able to respond. There are a variety of mental disabilities that might affect you in some respects, but it doesn't inevitably follow as night from day that he was unable to avail himself of these procedures simply because he was bipolar. It may be true that because he was bipolar, he couldn't, but it seems to me you've got the burden of coming forward and presenting something along those lines, and the trouble that I had is I couldn't find it here unless the argument, again, is the more general one. His condition was such that he was unable to understand the grievance procedure mechanism and process at all, and therefore he would not be able to understand the specific requirement of the single-issue rule. You follow what I'm getting at with my question? I do, and I think that that last point you made is exactly it. His disabilities made it so that he could not understand the grievance procedure as a whole, which is why he sought out that step. Right, so you didn't present anything that would have gone specifically to comprehending the single-issue rule. It's just he didn't know what to do from beginning to end. That's right. That's right. It was not limited to a misunderstanding of one provision. It was that he could not understand the grievance procedure as a whole. What does the evidence show, again, in that respect? Well, again... He goes to someone in the hierarchy in the prison and says, I want to file a grievance, right? So he knew that there was some means or method by which to grieve. That much we know. And then someone helps him fill out the forms. Correct. And in doing so, the staff member made the error that caused that grievance to be dismissed. Okay. Thank you. Thank you. And you have reserved your full three minutes rebuttal. Thank you. May it please the Court, I'm Ron Stay, I represent the appellee, Dr. Ike Akinwane. The district court's dismissal should be affirmed in this case because it doesn't satisfy any of the three articulated Ross bases for unavailability. And the appellant, Mr. Jeter, has not given us a sufficient basis to create a fourth. We know two things about Ross. First, that it sought to eliminate the kind of freewheeling, judge-made exceptions that had been prevalent prior to that under the special exceptions circumstance. And secondly, when Ross defined availability, the only basis under which exhaustion could be excused under the text of the PLRA, it focused on the institution, the institutions making the process available, what the institution did and did not do in designing and making the process available to inmates. So, Ross, while it may not speak affirmatively one way or the other, certainly does not encourage us to go into the area that Judge Huck spoke of, which is a purely subjective viewpoint from the inmate's perspective alone of whether or not the grievance procedure was made available. I take it you would accept the proposition that someone may be so disabled mentally that they're simply unable to avail themselves of the prison grievance mechanism. Yes, Your Honor, I'll accept that proposition. Let me ask you the second question. If indeed that is the case, does that fall into one, two, or three? Certainly doesn't on its face fall into the first one. The procedure, quote, operates as a simple dead end, which officers, with officers unable or consistently unwilling to provide any relief to grieved inmates. It wouldn't apply to that one, right? No, Your Honor. The second one is an administrative procedure is so opaque that it becomes practically speaking incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner could discern or navigate it. Correct. It would not fall for that. It's not that one. Third, prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation. Certainly not that one. It would not, Your Honor. So wouldn't there therefore have to be a fourth category for inmates so mentally disabled as to be unable to get to first base with the grievance mechanism, which is otherwise available to most other sentient prisoners? Your Honor, you're correct. There would have to be. However, we don't need to get there in this case. But before you move on to that, I just want to be clear then. So you would concede that the Ross enumeration of three circumstances would not exhaust the possibility there could be a fourth one? Your Honor. If you actually had an inmate who was sufficiently disabled mentally that he could not access the grievance mechanism, then that would be a basis for him to state a claim. Not necessarily, Your Honor. It would also depend on the features of the grievance policy. Right. I'm just saying you can imagine a circumstance where you'd have to reach out for a fourth remedy. Yes, Your Honor. I can imagine that circumstance, yes. However, in this particular case. So Ross is not exhaustive. It's exemplary. Your Honor, I'm not going to take a position on that point. Well, didn't you just take a position on that point? Well, yes, Your Honor. I can imagine the circumstance. However, I can't speak for the Supreme Court's view. Okay. So it would not be. Do you read Ross as being exhaustive or exemplary? That's all I'm asking. Your Honor, I read Ross. Am I bound to these three examples? Or am I free to say the Supreme Court did not have occasion to consider the fourth possibility and there's nothing in their holding that could have eliminated that? Certainly, no holding. The most you could say is maybe there's some dicta kind of pointing that way. Well, I think that it certainly, the possibility exists. Yes, Your Honor, it does. However. Okay. So assuming that that's the case, tell me why that's not what we have here. Her argument is very simple. At first, I thought the argument bore upon whether he could conceive of and understand the single issue rule. Her argument is broader. Her argument is he couldn't get to first base and he needed the prison officials to perfect the grievance mechanism. So he went to them and they filled it out for him. And they filled it out erroneously. He couldn't have filled it out to begin with. And if the error was that it had only, it had 17 claims rather than one, the error was the prison's error, not his. Well, Your Honor. I think she's saying something like that. Right. What the evidence actually shows, first of all, is there is no statement in the record that Mr. Ross affirmatively asked someone for help. Those words, I asked for help, don't appear. What Mr. Ross does say is that Mary Danzey, a correctional employee, did all his grievances. Okay. There's a big difference between that and going out and making the affirmative statement, I need help, can you help me with a certain topic? Secondly, there is a, what we do have is a grievance where Mr. Ross signed it, but the handwriting and the body of the grievance is different. So obviously what we can infer from that is he had some help at least transcribing the grievance. Mr. Ross was able to access the grievance procedure. He had filed a grievance before this one that was successfully navigated the grievance system that's in the record. He was able to get this grievance filled out. He signed it. It was timely filed. When it was reviewed. You're skipping now to the second step in the Turner analysis, correct? Yeah. The judge has discretion to hear the evidence and make a determination. But going back to, I think it's critical if we're going to write on this, is what are we going to say about the categories and how those categories should be structured? And I think I'm hearing you say different than you argued below and the district court ruled below and your briefs that there's the potential of more than three categories, correct? Well, Your Honor, I'm saying as we sit here today, perhaps that potential exists, but we don't need to address it in this opinion. But we may want to address that because people have to rely on this opinion possibly. So it seems to me, and I think this is where you're kind of going, that regardless of where that category comes from, it has to focus on the prison and how the prison operates its system as opposed to focusing so much on the individual's characteristics. That's correct, Your Honor. In this case, I can conceive a situation that could fall under Category 3, for example, if in fact the record shows Mr. Keeter did go to the person in charge of the process and was misled or maybe even negligent, gross negligence, however you want to describe it, by not advising him that what he's doing is wrong, then that wouldn't necessarily reflect so much on him, but the failure of the institution to do what it should do, which is to help somebody who comes, you know, with this disability and seeks help and doesn't give him that help, which would make it more of an objective approach than a subjective approach, focusing simply on the characteristics of the inmate. That's absolutely correct, Your Honor. If that, if the record did reflect that, then yes. And the reason I'm concerned about that is because the language in Ross seems time and again to focus not on the specific characteristics of the inmate, but on the process of the prison. And it says, I can't quite put pages out, 1858 of the opinion, it says, still the PLRA prevents, prevented the court from deciding that exhaustion would be unjust or inappropriate in a given case. And it also talks about, you know, the ordinary prisoner, a couple of other places, a reasonable prisoner can use them. So I think I'm hearing you say now that you can see a fourth category, or maybe an expansion of one of the other categories, but it's prison-oriented as opposed to inmate-oriented. Correct, because that's the guidance Ross gives us. That is correct. But yes, you know, what the evidence shows is that clearly Mr. Gieter has some alleged mental deficiencies, which, you know, at a motion-to-dismiss stage we have to assume to be true, that he has an eighth-grade special education, he cannot think good, that he's bipolar, he suffers from epilepsy. However, what the evidence doesn't show and what the record doesn't reflect is any statement by Mr. Gieter, and he, you know, he has a special education, but he is, it is at the eighth-grade level. All he had to say was, I didn't understand. I didn't understand. So your argument simply boils down to the insufficiency of the pleading. Correct. The complaint was insufficient to say that he didn't know how to proceed because of his mental illness. And that's what the district judge found. Correct. And clearly we can all agree that the pleadings indicate Mr. Ross had some amount of mental The mere fact that someone may have a mental disability does not necessarily shed light on what that individual person can and cannot do in a given circumstance, and in this case there is no indication in the record what Mr. Gieter could and could not do. He never made a statement that he was unable to navigate the grievance process. Despite having 18 or 20 filings after this issue was raised, the closest he came was that he gave his grievance to Mary Danzey and that she did all plaintiff's grievances. And moreover, the actual grievance that was actually processed in this case, you know, in terms of the staff member possibly introducing any error, the actual grievance that was processed, Mr. Gieter himself signed it, although the body, and then after he signed it, Mr. Gieter went behind Ms. Danzey apparently and added 15 handwritten pages to the grievance. At document 45-2, page 42, Mr. Gieter went by and he actually denoted them as an attachment, numbered the pages 1 of 15, 2 of 15, 3 of 15, and noted his grievance number on there. Clearly Mr. Gieter understands the general basis of what the grievance process is. He knew he had to file a grievance. There's evidence in the record that Mr. Gieter and Ms. Danzey discussed his need for an informal grievance, which was under a previous version of the grievance policy that required an informal grievance before a formal grievance. And she told him correctly, according to Mr. Gieter's pleadings, that informal grievances were no longer needed. And that he started with, all of that's absolutely correct, and it evidences a conversation where Mr. Gieter clearly understands he needs to file a written grievance. He needs to, he doesn't need to do the informal grievance step. He knows he needs to sign it. It was submitted on time. And more importantly, after his grievance was denied, Mr. Gieter filed an appeal. The appeal is in his handwriting alone. There's no indication whatsoever that he received any assistance whatsoever with his appeal. So he was able to navigate that process successfully. Well, not successfully in the merits, but successfully procedurally, he was able to file the appeal, and it was considered, it was ultimately denied. So what we have here, and what the district judge found, is regardless of whether Ross is exhaustive or illustrative, regardless of whether we do or do not decide whether or not a fourth basis can exist, in this case, the record shows that whatever mental disabilities Mr. Gieter may have had, they did not prevent him from successfully accessing the grievance policy. They did not prevent him from understanding the one issue rule, and therefore, they did not make the grievance process unavailable to him. What would you say to the Supreme Court case Jones v. Bach that says, we conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints? That's absolutely correct, Your Honor, and in the context of this case, Mr. Gieter was not required to plead exhaustion in his complaint. However, when we affirmatively pointed out in our motion to dismiss that he failed to exhaust, and this goes back to the burden issue, our burden was to show that there was an available administrative remedy, and that he didn't exhaust. No one disputes that he didn't exhaust here. The only issue is whether or not the remedy was available. We met that burden. In response to the motion to dismiss, he did state that Mary Danzey did all of his grievance paperwork, that Mary Danzey was responsible for refusing and denying his grievance, and he asked the court to see Mary Danzey did not gave him the remedies of the grievance procedure for this plaintiff. Is that not enough in that response to the motion to dismiss? Not enough in what respect, Your Honor, I'm sorry. Not enough to at least have alerted to the problem, to the potential problem with the assistance provided, if we're going to go under Prong 3 of Ross. Is that not enough? It's not enough where the grievance policy specifically contemplates that staff members may assist people in transcribing grievances, and it's clear from the record that Mary Danzey received his grievances. It's clear from the record that Mary Danzey and Mr. Gieter discussed his grievances and that he asked her a question about whether or not an informal grievance was required. Help me understand this. If Mary Danzey is helping him fill out the forms, which the pleading suggests, and she accumulated all 17 grievances in one, isn't she responsible for violating the single-issue rule? I mean, why didn't she just separately file 17 grievances? Well, Your Honor, I think in that, you're asking the question. Of course, we don't have any record. All we have is a complaint. Yeah, I see my time's expired, ma'am. Please. Yeah. Take your time. I think you're raising the issue of, that was raised in one of the footnotes in Ross when they talk about prison officials' machination, misrepresentation, and that kind of thing, the third bases of Ross. The question is, where do we draw the line on that? I'm not suggesting that Danzey was trying to mislead the inmate, just that she made the mistake herself. Why would she file a grievance, accumulating 17 separate items, when the rules clearly say you can only do one at a time? Because she— What inference am I supposed to draw from that? That she was transcribing and writing down what Mr. Jeter told her to write down. And there is no affirmative obligation upon the prison official to correct his mistakes. And if we look at the cases that are cited in Ross under that prong— So because he didn't say, oh, and by the way, the single-issue rule says they have to be one by one, so don't put them all in one, ma'am, lay them out separately. That's what he was obliged to do. Correct. I mean, Mr. Jeter has as much responsibility as Ms. Danzey, or even more so. In the case of Davis v. Hernandez, which is cited in Ross— Why is she helping him at all? Why doesn't she just say, fill it out and hand it in? Because he, I mean, probably asked her, can you, you know, write this out for him? And why does he say that he's asking her to help him? Oh, I didn't say, he didn't say, I'm not saying that he said that. You're saying, why is she helping him at all? What does the complaint tell us? All we have is the complaint. That's right. The complaint merely says, Mary Danzey did all plaintiff grievance. And that was in response to a question as to who the grievance coordinator was. Mary Danzey told him they don't use informal grievances anymore, and in another spot, it said that he just didn't get any help. So, you know, there is no statement or fact in the pleadings that really would support an inference that she gave him actual misleading advice, because that's the line that's drawn by Ross. It's not a failure to correct a mistake. It's did you actually receive, whether it's intentional or negligent, did you actually get advice that was erroneous? And under the Davis versus Hernandez case, did the inmate himself have a fair and reasonable opportunity to apprise himself of the procedure, even if he got erroneous advice? So we ask that the district court's judgment be affirmed, and I appreciate you allowing me the extra time. Thank you. Thanks very much. Ms. Waitkin, could you start your rebuttal by telling me, pointing me specifically to the complaint, where the complaint specifically alleges his inability to understand by virtue of bipolarity or something else? What will the complaint tell me, drawing it in a light most favorable to you? The complaint makes clear that he has mental illness, that he has an eighth grade special education, and he noted specifically that, quote, I cannot think good. But does the complaint ever allege, specifically, that on account of those items, he was unable to negotiate his way around these grievance procedures, in words or substance? Not in words, Your Honor. However, I do believe the implication is there in substance, because if he is alleging that he has these serious mental disabilities, the implication is that those disabilities resulted in his inability to understand the grievance process. And a prisoner with this type of serious mental disability is not going to be able to plead with particularity how he misunderstood the grievance procedure or why he misunderstood the grievance procedure. Help me with this. Refresh me. Was this complaint filed pro se or counseled? It was all pro se, Your Honor. How is the prison to know that he has that limitation, unless he expresses it? Isn't there some obligation to put them on notice? Otherwise, you're asking them to conjure up any potential reasons for not being able to exhaust. Well, he did put them on notice. As a preliminary matter, he is a prisoner in their institution. The folks who work with him know of his mental limitations. And indeed— Is that in the record? I'm sorry? Is that in the record, that Ms. Danzey was aware of his mental limitations and what they were? There is no information in the record, one way or another, about Ms. Danzey's— By the record, of course, the only record we have is the complaint. That's right. That's right. He does allege in the complaint that he is what he refers to as a mental health level three prisoner. That is a Georgia Department of Corrections designation that he has mental illness that falls under their level three designation, which they define as being someone with a hallucinations. They're in line somewhat of the rub, because mental illness is such a broad category. It could be just personality problems or things of that nature, to schizophrenia. I tell you what the concern I have is I don't have a problem with expanding either the nature of those three categories or even adding a category. It's the burden. Who has what burden to move forward? It seems to me that to require the prison to read into, as you'd like for the prison to do in this case, to read into all these horribles is putting an undue burden on the prison. It seems like there's some burden on the prison itself to put forth, here's my problem. I need help. And then the burden shifts, it seems to me, to the prison to do something about it. And that would be treating all the prisoners the same way. Any prisoner who comes with a problem and seeks help should be entitled to help, just as the opposite of harassing people for not following, should potentially fall into category three. This record concerns me because it's so unclear. Yes. Well, what we have in the record is that, again, in response to the defendant's motion to dismiss, where again the only issue on the table was exhaustion, Mr. Jeter did provide information about his mental limitations, about the fact that he cannot think good and has trouble understanding people, and about the fact that he sought and received assistance from Ms. Danzey with his grievance procedure. This is after the suit's filed, right? Yes. This was in response to the motion. I'm talking about back when, you know, the idea for this Reform Act was to give the prison the first opportunity to resolve this short of litigation. That was the goal, and to eliminate frivolous lawsuits. My concern is not giving the prison the opportunity to do something about it in prison, short of litigation. Well, he did give the prison that opportunity by seeking out a way to file a grievance. He asked the staff member to assist him with this grievance. And this facility, rather than recognizing that he may need a little additional assistance, as the policy in fact provides, instead they threw out the grievance on these procedural grounds and never addressed the underlying issues that he was raising. And the policy provides that staff members can help prisoners who may need that assistance due to illiteracy or due to disability. However, he was not provided with the help that was required to actually allow him to access that grievance. Just help me factually in terms of the pleading. Does the complaint say he filed Grievance 1 himself by hand and then went to them for Grievance 2 the next day, and they helped him with filing it with these 17 items all included in one? Is that what the complaint says? No, Your Honor. I believe it just says that he asked Ms. Danzey for assistance and that she did all of his grievances for him. So as to what happened with respect to the first grievance, the thing that he did file by hand, how do we learn about that? How's that part of a motion to dismiss record? I'm sorry, could you clarify what you're referring to with the thing that he filed by hand? I'm confused factually what's pled and what's said here. We know there's a plea, there's a complaint. It says, I went to her for help, she helped me, she filled out the form. I was bipolar, blah, blah, blah. But what about the first iteration? He files something before that, doesn't he? With the court you're asking? No, with the prison. There's no indication in the record that he successfully submitted a grievance on his own prior. Okay, so all we have is the grievance that was submitted through the assistance of Mary Danzey. In this instance, I should add that there is in the record, and my opposing counsel referred to this, that four years prior, he apparently attempted to file another grievance at that time. And that grievance was also denied, and there's no information in the record on whether or not it was denied on procedural grounds, because he didn't understand the process as here, or whether it was denied on substantive grounds. So four years previously, and I apologize if this isn't what you were asking, he attempted to file a grievance. And then the grievance at issue here, the only evidence in the record of the grievance that was submitted here was the one that was written out by the statute. The reason I raise it is I was looking at, I guess it was the magistrate's order in the report and recommendation. And on page six of that report and recommendation, the magistrate writes the following. Second, the defendants have not adequately explained an inconsistency in the dating of the plaintiff's original grievance. While the defendants filed an original grievance dated April 28, 2016, plaintiff's version is dated April 27, 2016, one day earlier. The two grievances overlap to a degree in subject matter, and both are signed by Mary Dancy, a grievance coordinator whom plaintiff previously named as a defendant. While plaintiff's April 27th grievance and attachments are composed in the plaintiff's barely legible script, the April 28th grievance submitted by the defendant is cogent and clearly legible and appears to have been written by somebody else. And then he talks about the Georgia grievance procedures, et cetera. I was just confused by that. Yes, Your Honor. We're on a motion to dismiss. The question is whether it states a claim or not. They say no because he failed to exhaust his administrative remedies and he was obliged to do so. I'm just trying to figure out, was there more than one filed? What is the magistrate talking about here? I believe in an attachment to one of Mr. Jeter's filings, he did include this earlier dated grievance form. However, there's no indication in the record that that form was actually processed by the prison. The only grievance that was processed— I just want to know whether that's attached to any of the complaint, whether I'm properly looking at that as part of the sufficiency of the complaint here. Yes, I believe Mr. Jeter attached that form to his complaint. That's document 10-1. Okay, so that is something I may consider as part of the pleadings in this case. Yes, I believe so, Your Honor. Thank you very much. Thank you. We'll proceed to the fourth and last case we have on this morning, Martinez v. Attorney General.